# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JOSE RODRIGUEZ-NOVOA,**

    **Plaintiff,**

    v.                                            No. 1:25-cv-01073-SMD-GBW

**TODD LYONS,** *et al.***,**

    **Defendants.**

## TEMPORARY RESTRAINING ORDER

THIS MATTER is before the Court on Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 11). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, the Motion is GRANTED.

## BACKGROUND

Jose Rodriguez-Novoa ("Rodriguez-Novoa" or "Petitioner") is a 26-year-old citizen and national of El Salvador, who, at the time of his arrest, was residing in California. Doc. 11 at 2. He entered the United States on or about August 14, 2021. Doc. 24 at 2. Upon entry into the United States, Rodriguez-Novoa was initially detained and returned to Mexico. *Id.* He reentered the United States again on August 16, 2021, and has remained continuously in the country since that date. *Id.* Rodriguez-Novoa is the father of two U.S. citizen children—one of whom requires extensive support at school and with therapists—and is married to a U.S. citizen wife, who suffers from both physical and mental health conditions. Doc. 11-1 at 2. Petitioner has no criminal history. Doc. 11 at 4.

On July 10, 2025, the Rodriguez-Novoa was arrested without a warrant during a United States Immigration and Customs Enforcement ("ICE") work-site raid in California. Doc. 11 at 3.

Two days later, on July 12, 2025, he was issued a Notice to Appear ("NTA"). *Id.* The NTA charged Rodriguez-Novoa with removability under 8 U.S.C. § 1182(a)(6)(A)(i), alleging that Rodriguez-Novoa is present in the United States without being admitted or paroled, or that he arrived in the United States at any time or place other than as designated by the Attorney General.[1] *Id.*

On July 11, 2025, the day following his arrest, Rodriguez-Novoa's prior legal counsel filed a request for release from detention, citing his lack of criminal history and his marriage to a U.S. citizen, with whom he is raising two U.S. citizen children. Doc. 11 at 3. Rodriguez-Novoa requested a bond hearing on August 24, 2025. *Id.* at 4. Prior to the hearing, Rodriguez-Novoa submitted to the Immigration Court a detailed packet of evidence in support of his release on bond under § 1226(a). *See* Doc. 11-4. On September 3, 2025, the Immigration Judge ("IJ") denied the request for a change in custody, finding "that [Rodriguez-Novoa] is an applicant for admission as defined under section 235(a)(1) of the INA and he is 'seeking admission' as that phrase is used in INA section 235(b)(2)(A)," and citing lack of jurisdiction pursuant to *Matter of Q. Li*. *See* Doc. 18-2. Without reference to the packet or the record before the Immigration Court, the IJ also made cursory findings that "[i]n the alternative, [Rodriguez-Novoa] is a flight risk, manner of entry, ties to the community." *Id.*

Prior to his arrest, Rodriguez-Novoa's wife filed a Form I-130, Petition for Alien Relative, on his behalf. Doc. 11 at 3. Rodriguez-Novoa also filed an asylum application, which was set for hearing before the Immigration Court on December 9, 2025. On November 25, 2025, DHS filed a motion to pretermit Petitioner's asylum application, arguing that he is barred from seeking

---

[1] On September 3, 2025, the Department of Homeland Security filed a Form I-261, lodging an additional charge under 8 U.S.C. § 1182(a)(7)(A)(i). Doc. 11 at 3.

2

asylum under INA § 208(a)(2)(A) and 8 C.F.R. § 1240.11(h)(2) due to his alleged status as being subject to the Asylum Cooperative Agreement (ACA) with Honduras. *See* Doc. 11-8.

## LEGAL STANDARD

A temporary restraining order preserves the status quo ante before a final decision on the merits. *Resolution Trust v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo is "the last peaceable uncontested status…before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019). A petitioner seeking a temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and the public interest favor relief. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

## DISCUSSION

As an initial matter, the Court has jurisdiction over Rodriguez-Novoa's petition. Respondents argue that 8 U.S.C. §§ 1252(e)(3) and (g) bar review of Rodriguez-Novoa's claims. Section 1252(e)(3)(A) provides that judicial review of "determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia." Section 1252(e)(3) governs "challenges on the validity of the system" and only applies to determinations of "(i) whether such section, or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." Respondents argue that by challenging his detention, Rodriguez-Novoa seeks judicial review of a written policy or guideline implementing § 1225(b), which in turn strips this Court of jurisdiction to hear this matter. *See* Doc. 18 at 15.

But Rodriguez-Novoa does not challenge the validity of the statutory scheme itself; rather, he asserts that Respondents lack authority to detain him under § 1225(b). Moreover, § 1252(e)(3) is limited by its express terms to determinations under § 1225(b), and for the reasons below, § 1225(b) does not apply here.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Respondents argue that Rodriguez-Novoa's claims relate to "the Secretary of Homeland Security's decision to *commence removal proceedings*, including the decision to detain an alien pending such removal proceedings," and are therefore categorically barred by § 1252(g). *See* Doc. 18 at 17–18. The Supreme Court rejected this reading in *Jennings v. Rodriguez* and explained that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." 583 U.S. 281, 294 (2018). Nothing in § 1252(g) precludes review of the decision to confine. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

For the reasons below, the Court finds that Rodriguez-Novoa is likely to succeed on the merits, he will suffer irreparable harm without injunctive relief, and the balance of equities and the public interest favor relief.

**I.    Rodriguez-Novoa Is Likely to Succeed on the Merits of His Claims.**

**a.  Section 1226(a) Governs Rodriguez-Novoa's Detention**

Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See Jennings*, 583 U.S. at 287–89. Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States"—*i.e.*, "applicants for admission." *Id*. at 297. Detention

pursuant to § 1225(b)(2)(A) is required "if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."

Section 1226(a) sets the "default rule" for detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. Under § 1226(a), a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." Noncitizens detained pursuant to § 1226(a) are therefore generally entitled to individualized bond hearings as described by federal regulation. *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Sections 1225(b)(2)(A) and 1226(a) are mutually exclusive in that both provisions cannot simultaneously govern Rodriguez-Novoa's detention. *E.g.*, *Romero v. Hyde*, 795 F. Supp. 3d 271, 286 (D. Mass. 2025); *see also*, *Patel v. Crowley*, No. 25-cv-11180, 2025 WL 2996787, at *5 (N.D. Ill. Oct. 24, 2025); *Artiga v. Genalo*, No. 25-cv-5208, 2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025).

Rodriguez-Novoa asserts that because he was detained in the interior of the United States, his detention is governed by § 1226(a) and he was therefore entitled to an individualized bond hearing. *See* Doc. 11 at 5–6. Respondents argue that Rodriguez-Novoa "falls squarely within the ambit of § 1225(b)(2)(A)'s mandatory detention requirement" as an "applicant for admission." *See* Doc. 18 at 18. Based on the statutory text, the Supreme Court's interpretation of the statutes, and the government's treatment of both Rodriguez-Novoa and other noncitizens already present in the United States, the Court finds that Rodriguez-Novoa's detention falls under § 1226(a).

### i. Sections 1225 and 1226

Respondents urge that § 1225(a) makes lawful "admission," rather than physical entry, the touchstone, and that "[a]n alien who enters the country illegally is treated as an 'applicant for admission.'" *See* Doc. 18 at 7. However, the plain text of §§ 1225 and 1226 does not support

5

Respondents' position that every noncitizen present in the United States who has not been lawfully admitted is "'deemed' an applicant for admission" and therefore subject to mandatory detention under § 1225(b)(2). *See id.* at 18.

Section 1225(b)(2)(A) provides "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding." By its own terms, the provision requires an "examining immigration officer" to determine that the noncitizen is "seeking admission." *See Cortez-Gonzalez v. Noem*, No. 25-cv-985, 2025 WL 3485771, at *4 (D.N.M. Dec. 4, 2025) ("Section 1225(b)(2)(A)'s detention provision comes into effect only after several conditions have been satisfied: (1) an 'examining immigration officer' (2) must conclude during an 'inspection' (3) of an 'applicant for admission' (4) who is 'seeking admission' (5) that the individual 'is not clearly and beyond a doubt entitled to be admitted[.]'"). Respondents' reading of the phrase "an applicant for admission" would render the phrase "seeking admission" redundant.

The phrase "seeking admission" in § 1225 "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025). By contrast, noncitizens who have lived in the country for years are no longer "seeking to enter the United States (lawfully or otherwise)." *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326, 2025 WL 2639390, at *8 (D.N.H. Sep. 8, 2025). While "a noncitizen present in the United States who has not been admitted" might be an "applicant for admission," a noncitizen who is "present" in the country is not "seeking admission"—i.e., seeking "lawful entry." *Id.*; *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488–89 (S.D.N.Y. 2025). This is consistent with the Supreme Court's interpretation in *Jennings*, explaining that "U.S. immigration law authorizes the Government to detain certain aliens

6

seeking admission into the country under §§ 1225(b)(1) and (b)(2). It *also authorizes* the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." 583 U.S. at 289 (emphasis added). Here, while Rodriguez-Novoa might not have been paroled or admitted into the United States, he was "already in the country" and could no longer be said to be "seeking to enter" at the time of his arrest. *See Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720, 2025 WL 2962908, at *6 (D. Colo. Oct. 17, 2025) ("the Court agrees with Petitioner that § 1225(b)(2) only applies to noncitizens 'seeking admission' and inspected while trying to enter the country, and not to noncitizens who have lived in the United States continuously for over two years").

### ii. *Matter of Yajure Hurtado*

Respondents acknowledge that Rodriguez-Novoa's construction of §§ 1225 and 1226 is consistent with the government's longstanding position. *See* Doc. 18 at 11 ("For many years after [the Illegal Immigration Reform and Immigration Responsibility Act], DHS treated noncitizens who entered the United States without admission and were later detained away from the border as being subject to discretionary detention under 8 U.S.C. § 1226(a) rather than mandatory detention under 8 U.S.C. § 1225(b)(2)."). On July 8, 2025, DHS issued an internal memorandum indicating that DHS was changing its approach to noncitizens "alleged to be present in the country without admission and who would have previously been detained by DHS under 8 U.S.C. § 1226," and, moving forward, would treat such noncitizens as subject to mandatory detention under § 1225(b)(2)(A). *See id.*

Respondents rely on the Board of Immigration Appeal's ("BIA") subsequent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), to support their current position that any noncitizen who has not been lawfully admitted is subject to mandatory detention under § 1225.

7

*See id.* at 11–13. *Yajure-Hurtado* is not binding on this Court and is entitled to little deference. The Supreme Court has made clear that "agencies have no special competence in resolving statutory ambiguities." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400–01 (2024). Moreover, the BIA's view has not "remained consistent over time," *see id.* at 386, as several recent BIA decisions have held that the detention of noncitizens arrested within the United States is governed by § 1226. *E.g.*, *Matter of Akhmedov*, 29 I. & N. Dec. 116 (B.I.A. 2025); *see also Martinez*, 792 F. Supp. 3d at 222 (noting "three recent, albeit unpublished, decisions by the [BIA], all clearly holding that the detention of a non-citizen arrested within the United States is governed under section 1226").

### iii.  Effect of Post-Conclusion Voluntary Departure

Two days before this Court held a hearing on the emergency motion, Rodriguez-Novoa requested and was granted voluntary departure at the conclusion of removal proceedings, in lieu of an order of removal. Respondents assert that Rodriguez-Novoa is now lawfully detained as a condition of voluntary departure, and his motion should be denied. *See* Doc. 18 at 3. Rodriguez-Novoa maintains that while the IJ has granted voluntary departure with an alternate order of removal, the voluntary departure period is not yet running. *See* Doc. 20 at 3.

The IJ ordered that Rodriguez-Novoa be granted voluntary departure at the conclusion of proceedings. At the hearing on the emergency motion, Petitioner's counsel advised the Court that Rodriguez-Novoa requested post-conclusion voluntary departure and reserved the right to appeal. Petitioner's counsel stated that the IJ denied a motion to administratively close the proceedings before the Immigration Court based on humanitarian factors and the pending I-130 petition, and that Rodriguez-Novoa intended to appeal the denial of the motion to the BIA.

By the order's own terms, the grant of voluntary departure is tied to the conclusion of proceedings. The voluntary departure period has not yet begun while Petitioner pursues his right to appeal. An IJ is empowered to set conditions on a voluntary departure order to ensure timely departure, *see* 8 C.F.R. § 1240.26(c)(3), and upon conclusion of proceedings, the authority for detention may change. *Cf. Romero*, 795 F. Supp. 3d at 281 (authority for petitioner's detention "shifted" from § 1226 to § 1231 upon order of removal and back to § 1226 upon reopening of removal proceedings). Until the conclusion of proceedings, Rodriguez-Novoa remains detained under § 1225 pursuant to the IJ's September 3, 2025 order denying his request for a change in custody status.

### b. Rodriguez-Novoa's Due Process Claim

The Court finds that Rodriguez-Novoa is likely to succeed on his claim that his detention violates the Fifth Amendment's Due Process Clause because he has a protected liberty interest in remaining free from detention and was deprived of that interest without constitutionally adequate process. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, No. 25-cv-00979, 2025 WL 2941217, at *3 (D.N.M. Oct. 15, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

There is a substantial likelihood that Rodriguez-Novoa holds a protected liberty interest. *See Zadvydas*, 533 U.S. at 693 ("once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). Because he spent nearly four years at liberty in the United States prior to his arrest, Rodriguez-Novoa possesses a

cognizable interest in his freedom from detention. Remaining out of custody enabled him to do a "wide range of things," including to live at home, work, and "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). He met and married a U.S. citizen, Daisy Marie Vasquez, with whom he shares a 10-month-old son and a 5-year-old stepson. Doc. 11-1 at 2. Rodriguez-Novoa is entitled to procedural safeguards to protect his liberty interest. Under § 1226, Rodriguez-Novoa is entitled to an individualized bond hearing, and his continued detention without such review constitutes an ongoing violation of his due process rights.

## II. Rodriguez-Novoa Faces Irreparable Harm Without Injunctive Relief.

To demonstrate irreparable harm, Rodriguez-Novoa must show that he stands to suffer an injury that is "certain, great, actual, and not theoretical." *Schrier v. Univ of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005). What makes an injury "irreparable" is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). Merely serious or substantial harm is not "irreparable." Infringement of a constitutional right is per se irreparable harm. *Free the Nipple*, 916 F.3d at 805. The Court therefore finds that Rodriguez-Novoa suffers irreparable harm every day that he remains in custody without an individualized bond hearing.

## III. The Balance of Equities and the Public Interest Favor Relief.

Upon consideration of the record, the Court finds that the equities weigh in favor of injunctive relief and that granting the temporary restraining order is in the public interest. Any burden on Respondents to release Rodriguez-Novoa from custody and hold a pre-deprivation hearing is minimal compared to the harm Rodriguez-Novoa suffers in detention. While Respondents do not address this factor in their response (*see* Doc. 18), detention does not appear necessary to carry out Respondents' interest in securing Rodriguez-Novoa's appearance at

immigration proceedings—or his timely departure if his appeal is unsuccessful—given his marriage to a U.S. citizen, the pending I-130 petition, and his intention to apply for an I-601A provisional waiver. The Court therefore finds that the equities weigh in favor of injunctive relief.

## CONCLUSION

The Court finds that Rodriguez-Novoa satisfies the requirements for issuance of a temporary restraining order. The status quo ante is the position Rodriguez-Novoa occupied prior to his July 2025 arrest, and this Order restores and preserves that posture pending further proceedings. IT IS ORDERED that:

1. Rodriguez-Novoa's Emergency Motion for Temporary Restraining Order (Doc. 11) is GRANTED.

2. Respondents are ORDERED to release Rodriguez-Novoa within 24 hours of this Order.

3. Respondents are restrained from re-detaining Rodriguez-Novoa unless they demonstrate, by clear and convincing evidence at an individualized pre-deprivation hearing before a neutral arbiter, that Rodriguez-Novoa is a danger or a flight risk, consistent with the provisions and protections of 8 U.S.C.§ 1226.

IT IS SO ORDERED.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**